**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<u>**FOR PUBLICATION**</u>

| | |
|---|---|
| In re:<br><br>CRANE ENTERPRISES, LLC,<br><br>         Debtor. | Case No. 25-10405 (DSJ)<br>Chapter 11 |
| CRANE ENTERPRISES, LLC,<br><br>         Plaintiff,<br><br>    v.<br><br>MICHAEL E. CRANE, DANIEL M.<br>CRANE, JOHN DOE AND JANE DOE<br>(Fictitious Persons),<br><br>         Defendants. | Adv. Pro. No. 25-01040 (DSJ) |

<u>**DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

**APPEARANCES:**

**WILK AUSLANDER LLP**
*Proposed Special Litigation Counsel for the Debtor*
825 Eighth Avenue, 29th Floor
New York, NY 10019
By:    Eric J. Snyder, Esq.

**SILVERMAN LAW OFFICE, PLLC**
*Counsel to the Debtor*
4 Terry Terrace
Livingston, NJ 07039
By:    Brett Silverman, Esq.

**MORRISON TENENBAUM PLLC**
*Counsel to Michael E. Crane and Daniel M. Crane, Defendants*
87 Walker Street, Floor 2
New York, NY 10013
By:    Brian J. Hufnagel

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of Crane Enterprises, LLC (the "**Debtor**" or "**Plaintiff**")

for summary judgment in an adversary proceeding by which Plaintiff seeks a determination that

it is entitled to turnover of its property (a Nassau County cooperative apartment) from Michael E.

Crane and his "adult son" Daniel M. Crane (the "**Defendants**") under § 542 of the Bankruptcy

Code.

Defendants assert that they hold a valid lifetime lease to the property, under which they

are to pay $1.00 per year in rent while assuming certain other responsibilities at the property.

Although Defendants initially denied it, Plaintiff obtained a pre-petition Judgment of Possession

and Warrant of Eviction (the "**Judgment**") in Nassau County District Court, albeit in a

proceeding in which Michael E. Crane, but not Daniel M. Crane, was a respondent. The validity

of the lease on which Defendants rely was litigated in that proceeding, and the court issued the

Judgment in favor of Plaintiff notwithstanding the purported lifetime lease.

Plaintiff's request for turnover via its motion for summary judgment is predicated on

principles of *res judicata* and/or collateral estoppel—namely, that the pre-petition award of the

Judgment is dispositive, notwithstanding Defendants' strenuous insistence that their asserted

leasehold interest is valid and precludes judgment for Plaintiff. In opposition, Defendants press

arguments on the merits of turnover, which would present genuine issues of material fact were it

not for the Judgment. Defendants further argue that the Judgment lacks the requisite finality to

control here, and, in any event, fails to bind Daniel M. Crane because he was not a party in the

prior state-court proceeding.

For the reasons explained further below, Debtor's motion for summary judgment is

granted and Defendants' objection overruled. In essence, the Court concludes that the Judgment

2

determined the issues that Defendants now raise, and that the Judgment has preclusive effect not solely on Michael E. Crane, who was the defendant or respondent in the prior state-court action, but also on his alleged co-tenant Daniel M. Crane. Because the Judgment establishes that Michael E. and Daniel M. Crane have no valid ongoing leasehold or other interest in the apartment, Plaintiff is entitled to turnover of its property.

## BACKGROUND

### A. Debtor's Bankruptcy

Plaintiff filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 4, 2025. [*Chapter 11 Voluntary Petition for Non-Individual*, Case No. 25-10405, ECF No. 1 ("**Petition**").] The Debtor is owned 50% by the estate of Rhoda Crane and 50% by the estate of Joyce Crane. [*Statement of Undisputed Facts, Pursuant to LBR 7056-1(b)*, Case No. 25-01040, ECF No. 6-1 ¶ 1 ("**LBR 7056-1(b) Statement**").] Both estates have court-appointed administrators, David. M. Repetto and Stuart Reiser, who are overseeing the management of the Debtor. [*Id.* ¶¶ 2–5.] Mr. Repetto is currently serving as Debtor's president while Mr. Reiser is serving as Debtor's secretary and treasurer. [*Id.*]

The Debtor is organized as a limited liability company and holds a single asset: 99 shares in a cooperative residential corporation. [*See* Petition, Schedule A/B.] In connection with the issuance of these shares, the Debtor entered into a proprietary lease granting Debtor the right to possess the two-bedroom cooperative located at 360 Shore Road, Apt 8L, Long Beach, NY 11561 (the "**Property**"). [*See* LBR 7056-1(b) Statement ¶¶ 6–7.] According to a "Pricing Recommendation" obtained by the Debtor from a real estate broker at Stonegate Real Estate, the Property is estimated to be worth between $699,000 and $875,000. [*See Motion for Summary Judgment Against Michael E. Crane and Daniel M. Crane*, ECF No. 6 ¶ 11 ("**Motion**"); *see also*

Motion, Exhibit E.] The Property's sole encumbrance is maintenance arrearages that are accumulating as a priming lien on the property. [*See id.*] These apartment common charges have not been paid since December 2023 and total $32,896.71 as of February 2025. [*See id.*] Debtor's liabilities consist of these apartment common charges in addition to sums owed to two law firms. [*See id.*; *see also* Motion, Exhibit D.]

### B. The State Court Proceedings

Defendants possess or reside in the Property. [*See Complaint*, Case No. 25-01040, ECF No. 1 ¶ 8 ("**Complaint**") ("Defendant Michael E. Crane and/or Daniel M. Crane are individuals who have possession of and/or reside in the [Property]."); *Answer*, Case No. 25-01040, ECF No. 3 ¶ 8 ("**Answer**") ("Defendants admit the allegations set forth in Paragraph 18 of the Complaint."); *see also Counter Statement of Additional Undisputed Facts, Pursuant to LBR 7056-1(b)*, Case No. 25-01040, ECF No. 7-1 ¶ 12 ("(Correction to delete 'or') Both Michael E. Crane and his adult son Daniel M. Crane reside in the Apartment . . . .").] After Michael E. Crane's aunt, Rhoda Crane, died and probate proceedings concerning her estate ensued, the Probate Part of the Superior Court of New Jersey issued a judgment dated February 4, 2022, relating to the Plaintiff finding that "Michael Crane has never held any vested ownership in Crane Enterprises, LLC, at any time, whatsoever," and "Michael Crane has no right whatsoever to reside or occupy any property owned by Crane Enterprises, LLC." [Motion, Exhibit A ¶¶ 23–24.]

In November 2022, the Debtor commenced an eviction action (the "**Eviction Action**") against Michael E. Crane in the Civil Part of the Nassau County District Court of the State of New York (the "**District Court**") to remove him from the Property. [Complaint ¶ 19.] In the Eviction Action, Michael E. Crane produced what he alleges to be a lifetime lease (the "**Alleged**

Lease") on the Property for the stated rent of $1.00 per year. [Motion ¶ 14; *see also* Motion, Exhibit F.] Whether the Alleged Lease was valid was raised at several junctures throughout the Eviction Action, including Michael E. Crane's answer, motion to dismiss, post-trial briefs, and during the Eviction Action's trial. [*Reply to Motion for Summary Judgment and to Objection*, Case No. 25-01040, ECF No. 8 ¶ 15 ("**Reply**"); *see also* Reply, Exhibits B, C, D, E.] On November 18, 2024, the District Court entered the Judgment in the Eviction Action in Crane Enterprises, LLC's favor, ordered Mr. Crane evicted, and granted a stay of execution through January 31, 2025. [*See* Complaint ¶ 20; *see also* Complaint, Exhibit A.] Neither Defendant moved for reconsideration or sought an extension of the stay of execution of the Judgment or a stay pending appeal.[1] [*See* Motion ¶ 16.] Daniel M. Crane never moved to intervene. [*Cf. Declaration of Daniel Crane in Support of Objection by Defendants Michael E. Crane and Daniel M. Crane To, And in Opposition To, Motion of Plaintiff Crane Enterprises, LLC For Summary Judgment*, Case No. 25-01040, ECF No. 7-2 ¶ 8 ("**Daniel Crane's Declaration**").] On December 23, 2024, Michael E. Crane filed a notice of appeal in the Eviction Action to appeal the suit to the Appellate Term, Second Department of the Supreme Court of the State of New York. [Reply, Exhibit G.] Since the filing, Michael E. Crane has taken no action to perfect the appeal. [Reply ¶ 17.] His time to do so had not expired as of the March 4, 2025 filing of Debtor's bankruptcy petition. Neither Michael nor Daniel Crane moved to dismiss the bankruptcy case and they never sought relief from the automatic stay until July 3, 2025 [*see generally Docket, In re Crane Enterprises LLC*, Case No. 25-10405], at which point, with a hearing on the Motion

---

[1] The Eviction Action was decided in the District Court of the State of New York, County of Nassau: First District located in Hempstead at Index No. LT 4282/22. Despite the Court's diligent efforts to locate the docket of this case and any appeals of the Judgment, this Court was unable to find the docket or records relating to the Eviction Action or the appeal of the Eviction Action. The Court therefore relies on the exhibits attached to the Motion, Objection, and Reply.

having already been held, they sought stay modification so they could pursue relief from the Judgment in state court. [*See Motion for Relief from Stay and Waiver of Fourteen Day Stay of Order Under Rule 4001(a)(3)*, Case No. 25-10405, ECF No. 18.] The Court expects to decide that lift-stay motion soon.

### C. This Adversary Proceeding and the Parties' Arguments

The day after filing the Petition, Plaintiff commenced the above-captioned adversary proceeding by filing the Complaint, in which Plaintiff asserts one count pursuant to § 542 of the Bankruptcy Code for an order directing Defendants Michael E. Crane and Daniel M. Crane to turn over possession of the Property to the Debtor. [*See* Complaint ¶¶ 21–25.] On April 22, 2025, Defendants filed an Answer that asserts 5 affirmative defenses: 1) Plaintiff has failed to state a claim upon which relief could be granted; 2) Defendants hold a lifetime lease for the Property and are entitled to remain in possession; 3) Plaintiff lacks standing to bring this action because Plaintiff is not a creditor of the Defendants; 4) a statute of limitations defense; and 5) the underlying claims are barred by *res judicata* because the claims must be pursued in New York State Court as opposed to the bankruptcy court. [*See* Answer.] On May 22, 2025, Plaintiff filed the Motion for summary judgment, arguing that there is no genuine dispute of material fact and that Plaintiff is entitled to turnover of the Property as a matter of law. [*See* Motion.] In the Motion, Plaintiff argues that Defendants hold no valid possessory interest, *res judicata* prevents Defendants from relitigating the validity of the Alleged Lease which was necessarily determined through the Eviction Action, and none of Defendants' affirmative defenses prevent Plaintiff's recovery. [*See id.* ¶¶ 29–35.]

In their objection to the Motion, Defendants argue that Daniel M. Crane was never served with the eviction documents relating to the Eviction Action and the Judgment cannot be enforced

against him. [*Objection to Motion*, Case No. 25-01040, ECF No. 7 ¶ 13 (the "**Objection**").]

Defendants also averred (incorrectly) that the Eviction Action has not been concluded because

the Judgment was never entered, which Defendants claim prevents Michael E. Crane from

appealing the Judgment or seeking a stay pending appeal. [*Id.* ¶ 14–16.] Defendants further

contend that this litigation should not be heard as an adversary proceeding in bankruptcy court

because the matter is already in state court and the state court is the appropriate forum to handle

this dispute. [*Id.* ¶ 18–20.]

Plaintiffs filed a Reply and attached copies of a Notice of Entry of the Judgment in the

state-court proceeding and Michael E. Crane's Notice of Appeal to the pleading. [*See* Reply; *see*

*also* Reply, Exhibits F, G.] Plaintiff's Reply argues that co-tenants who are asserting identical

legal positions are in privity for purposes of applying *res judicata* such that Daniel M. Crane is

bound by the Judgment and is prevented from relitigating the issue of the validity of the Alleged

Lease. [*See id.* ¶ 9.] Plaintiff additionally argues that the Alleged Lease is void under New York

law because when a lease's term exceeds 3 years, the lease or a memorandum thereof must either

be filed with the clerk in the requisite county to be binding upon a bona fide purchaser—a

position the Debtor can assert in bankruptcy. [*See id.* ¶¶ 20–28.]

## <u>JURISDICTION</u>

This Court has jurisdiction over this bankruptcy case and this adversary proceeding

pursuant to 28 U.S.C. §§ 157(b), 1334, and the Amended Standing Order of Reference M-431,

dated January 31, 2012 (Preska, C.J.). This is a "core proceeding" pursuant to 28 U.S.C. §

157(b)(2)(E) because it concerns a request for the turnover of property of the estate (core

proceedings include "orders to turn over property of the estate"). This Court possesses the

authority to enter a final judgment in a core proceeding "arising under title 11" consistent with

Article III of the United States Constitution. *See Stern v. Marshall*, 564 U.S. 462, 474–75 (2011);

*see also In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 674 (S.D.N.Y. 2011) (proceedings arise

under title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy

Code"). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

### A.  Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made

applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056). "An issue of fact is genuine if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost

v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture 7 L.P. v.

Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "The burden of showing that no genuine factual

dispute exists rests on the party seeking summary judgment, and in assessing the record to

determine whether there is a genuine issue as to a material fact, the court is required to resolve

all ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought." *Id.* (quoting *Sec. Ins. Co. of Hartford v. Old Dominion Freight

Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Even a "failure to oppose a motion for summary judgment alone does not justify the

granting of summary judgment." *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244

(2d Cir. 2004). Rather, "[i]f the evidence submitted in support of the summary judgment motion

does not meet the movant's burden of production, then summary judgment must be denied even

if no opposing evidentiary matter is presented." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d

95, 110 (2d Cir. 2006) (emphasis omitted) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244). When

adjudicating a summary judgment motion, the court "must be satisfied that the citation to evidence in the record supports the assertion" set forth in the statement of undisputed facts. *Vt. Teddy Bear*, 373 F.3d at 244. "And, of course, the court must determine whether the legal theory of the motion is sound." *Jackson v. Fedex*, 766 F.3d 189, 194 (2d Cir. 2014).

### B.  Plaintiff Is Entitled to Turnover of Its Property

Plaintiff claims entitlement as a matter of law to turnover pursuant to Section 542(a) of the Bankruptcy Code, contending that there is no genuine dispute of material fact that the Property is property of the Debtor's estate, the Defendants are in possession of the Property, and the Property is one which may be sold or leased for the benefit of the estate. The Court agrees.

Section 542 of the Bankruptcy Code creates a mechanism by which a trustee, or debtor-in-possession, may seek the turnover of property of the estate that the estate "may use, sell, or lease," but which is in the "possession, custody, or control" of a third party. 11 U.S.C. § 542; *see also DeFlora Lake Dev. Assocs., Inc. v. Hyde Park (In re DeFlora Lake Dev. Assocs., Inc.)*, 628 B.R. 189, 205 (Bankr. S.D.N.Y. 2021) ("A debtor in possession has the power to bring turnover proceedings to recover property of the estate under § 542.") (internal citations omitted); *In re Taub*, 427 B.R. 208, 222 (Bankr. E.D.N.Y. 2008) ("Bankruptcy Code Section 542 creates a mechanism by which a trustee or debtor-in-possession may seek the turnover of property of the estate that the estate may use, sell, or lease, but which is in the possession, custody, or control of another entity.").

To support a cause of action for turnover, the party seeking turnover must demonstrate that: (1) the property is (or was during the bankruptcy case) in the possession, custody or control of a noncustodial third party; (2) the property constitutes property of the estate; (3) the property is a type that the trustee could use, sell or lease pursuant to Section 363 or that the debtor could

exempt under Section 522; and (4) that the property has more than inconsequential value or

benefit to the estate. *See* 5 Collier on Bankruptcy P 542.03; *see also Brown v. Pyatt (In re Pyatt)*,

486 F.3d 423, 427 (8th Cir. 2007) (stating that "the drafters of § 542(a) made it clear that the

turnover obligation applies to *property of the estate*") (emphasis added); *Weinman v. Graves (In*

*re Graves)*, 609 F.3d 1153, 1157 (10th Cir. 2010) (finding that "the statutory requirements for

turnover . . . clearly *require possession* during the case"), *cert. denied*, 562 U.S. 1135 (2011)

(emphasis added); *Kaspar v. M. Cabrera & Assocs. P.C. (In re Kaspar)*, 667 B.R. 195, 220

(Bankr. S.D.N.Y. 2025) (the "party seeking turnover must establish . . . that the property has

*more than inconsequential value or benefit* to the estate") (emphasis added) (internal citations

omitted). The Bankruptcy Code does not impose a statute of limitations on claims for turnover

pursuant to Section 542. *See* 5 Collier on Bankruptcy P 542.01 (citing *Burch v. Ganz (In re*

*Mushroom Transp. Co.)*, 382 F.3d 325, 336–37 (3d Cir. 2004); *Olsen v. Reuter (In re Reuter)*,

499 B.R. 655, 668 (Bankr. W.D. Mo. 2013) (stating that "[t]here are no strict deadlines or statute

of limitations mandating when the Trustee must take such action")).

Courts applying Section 542(a) have held that the Bankruptcy Code authorizes a debtor

to seek turnover of real property that is being occupied by tenants who do not possess a valid

possessory interest. *See Schachter v. Lefrak (In re Lefrak)*, 223 B.R. 431, 438–40 (Bankr.

S.D.N.Y. 1998) (determining that the bankruptcy court had authority to order turnover

compelling non-debtor wife of debtor to surrender cooperative apartment formerly owned by

debtor in the absence of a possessory interest granted by valid agreement or decree); *In re*

*Roussos v. Ehrenberg* (*In re Roussos*), No. CV 17–552–JFW, 2017 WL 2259674, at *5–6 (C.D.

Cal. May 23, 2017) (finding that the trustee was "not seeking to dispossess lawful residents with

valid and enforceable leases through a disguised unlawful detainer action," but instead, the

trustee was simply seeking turnover of property of the estate where the occupants did not present evidence that demonstrated that they had a valid possessory interest); *Moorefield v. Rosenthal (In re Rosenthal)*, 32 B.R. 33, 35 (Bankr. S.D. Fla. 1983) (ordering turnover of condominium pursuant to 11 U.S.C. § 542(a) where condominium was property of debtor's bankruptcy estate by nature of debtor's original interest in a trust which held title to condominium).

Here, although Defendants vigorously assert factual contentions that otherwise would require a trial in the absence of a dispositive consideration, Debtor relies on the final judgment entered by the state court that presided over the Eviction Action against Michael E. Crane prior to the Debtor's bankruptcy filing. Thus, the Motion turns on whether that prior state court judgment decided the issues that control this turnover motion, and, further, whether the judgment binds Daniel M. Crane despite the fact that he was not a named party to that proceeding.

The only elements of a turnover action that Defendants' factual contentions dispute necessarily were decided in Debtor's favor by the prior state-court judgment—a conclusion that is reinforced by facts that are undisputed here. The first element of a turnover action is whether a third party is in possession, custody or control of the property. *See In re Pyatt*, 486 F.3d at 427. Such a finding is inherent in the state court's Judgment, which was necessitated by Defendants' occupancy of the Property. In fact, Defendants' Answer admits allegations that establish this element, namely that Defendants currently reside at or assert a tenancy interest in the Property. [*See* Complaint ¶ 18 ("Defendant Michael E. Crane and/or Daniel M. Crane are individuals who have possession of and/or reside in the [Property].")); Answer ¶ 18 ("Defendants admit the allegations set forth in Paragraph 18 of the Complaint."); Reply ¶¶ 37–38.]

Second, while Defendants' Answer denies Debtor's averment in the Complaint that the Property is property of Debtor's bankruptcy estate, the Judgment establishes that Debtor owns

the Property. [*See* Answer ¶ 23; Objection ¶ 3.] Meanwhile, Defendants do not make arguments in opposition to Debtor's rights to the Property other than to point to the Alleged Lease and their asserted status as tenants. [*See* Answer ¶ 23; Objection ¶ 3.] Indeed, not only does the Judgment recognize Debtor's ownership of the Property, but even Defendants' own contentions here are premised entirely on an asserted lease to them from Debtor, which necessarily reflects Defendants' acknowledgment of an ownership interest of Debtor in the property.[2] [*See* Answer ¶ 23; Objection ¶ 3.] Defendants likewise have failed to identify evidence contesting Debtor's showing that their ownership interest in the Property is further substantiated by the share issuance and proprietary lease between the cooperative apartment corporation (Xander) and the Debtor. [*See* Complaint ¶¶ 16–17; Motion ¶¶ 27–28.]

Third, the Property undisputedly is a cooperative apartment that Debtor may use, sell, or lease. In fact, as noted, Defendants' central contention is that they have a lease from Debtor. [*See* Answer at 3.] Defendants question Plaintiff's evidence of the unit's market value but Defendants presented no evidence of their own of the unit's value and they have not contended that the apartment lacks any value whatsoever to the Debtor's estate; no reasonable juror could conclude that a two-bedroom apartment in Nassau County encumbered by nothing other than $30,000 in maintenance arrears would not generate significant sale proceeds. [*Cf.* Motion, Exhibit E.] Thus, the Court concludes that there are no genuine disputes of material fact regarding the elements of turnover and Plaintiff has demonstrated that it is entitled to turnover of the Property in the absence of a valid possessory interest or other defense asserted by Defendants.

---

[2] The Court addresses these arguments in the following section and concludes that Defendants have presented no triable factual issue as to whether they have any valid possessory interest to the Property. *See infra*, Defendants Have No Valid Possessory Interest in the Property.

### C.  Defendants Have No Valid Possessory Interest in the Property

Plaintiff argues that the Judgment precludes any genuine factual dispute regarding the

validity of the Alleged Lease pursuant to principles of *res judicata*, whereas Defendants contend

that the Judgment "is not the end of the eviction proceeding" and that the Judgment is not

enforceable as to Daniel M. Crane. [*See* Motion ¶¶ 29–36; Objection ¶ 1–2.] As an initial

observation, Plaintiff has blurred or confused the principles of *res judicata* and collateral

estoppel, but the Court nevertheless concludes that Plaintiff demonstrated that the Judgment

collaterally estops both Michael E. Crane (as a party to the prior state court proceeding in which

the Judgment was entered against him) and Daniel M. Crane (as an asserted co-tenant and party

in privity to Michael E. Crane) from relitigating the issue of the validity of the Alleged Lease.

Bankruptcy courts follow the collateral estoppel laws of "the state where the prior action

occurred." *Vyshedsky v. Soliman* (*In re Soliman*), 515 B.R. 179, 185 (Bankr. S.D.N.Y. 2014)

(citing *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997)) (internal quotations

omitted); *see also Evans v. Ottimo*, 469 F.3d 278, 281–82 (2d Cir. 2006) (bankruptcy court erred

in not applying collateral estoppel based on a state court default judgment finding regarding

fraud). The Eviction Action was determined in New York, and so New York's preclusion rules

govern this dispute.

Under New York law, the doctrine of collateral estoppel prevents a party or those in

privity with that party from relitigating an issue that was decided in an earlier proceeding where

the party against whom preclusion is sought had a full and fair opportunity to litigate the precise

issue at hand. *Id.* (citing *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 456 (N.Y. 1985)). "The two

elements that must be satisfied to invoke the doctrine of collateral estoppel are that (1) the

identical issue was decided in the prior action and is decisive in the present action, and (2) the

party to be precluded from relitigating the issue had a full and fair opportunity to contest the prior issue." *Franklin Dev. Co. v. Atl. Mut. Ins. Co.*, 876 N.Y.S.2d 103, 105 (N.Y. App. Div. 2009) (citing *Luscher v. Arrua,* 801 N.Y.S.2d 379, 381 (N.Y. App. Div.)). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Evans*, 469 F.3d at 281–82 (quoting *Kaufman*, 65 N.Y.2d at 456).

Additionally, "[t]he rule in New York is that the 'pendency of an appeal does not prevent the use of the challenged judgment as the basis of' collateral estoppel." *Anonymous v. Dobbs Ferry Union Free School Dist.,* 797 N.Y.S.2d 120, 121 (N.Y. App. Div. 2005) (quoting *In re Amica Mut. Ins. Co.* [*Jones*], 445 N.Y.S.2d 820, 822 (N.Y. App. Div. 1981)); *see Parkhurst v. Berdell*, 110 N.Y. 386, 392 (N.Y. 1888) ("the appeal did not suspend the operation of the judgment as an estoppel").

The Court acknowledges that reasonable minds could differ about the fairness of collaterally estopping a litigant whose opportunity to pursue an appeal from an adverse judgment was frustrated by the commencement of a post-judgment bankruptcy case by the party that prevailed at trial in the action. In fact, in one case identified by this Court's independent research, a bankruptcy court ruled against a debtor seeking to collaterally estop its adversary based on a judgment that was under appeal. *See Gibraltar Industries, Inc. v. Douds (In re Douds)*, 327 B.R. 122 (Bankr. W.D.N.Y. 2005). *Douds*, however, is distinguishable and not fairly applicable to the facts here. Among other things, to a much greater extent than in *Douds*, Defendants have had ample opportunity to seek relief from the eviction Judgment, and yet they have failed to do so both before and after the bankruptcy case began. Moreover, their pending,

late-filed lift-stay motion in the main bankruptcy case presents a further and appropriate

opportunity to pursue their asserted entitlements. [*See Motion for Relief from Stay and Waiver of

Fourteen Day Stay of Order Under Rule 4001(a)(3)*, Case No. 25-10405, ECF No. 18.]

In *Douds*, a creditor (Gibraltar Steel Corp.) brought an adversary proceeding seeking to

except debt from discharge, and the debtor moved to dismiss or for summary judgment in

reliance on a trial-level decision of the New York State Supreme Court. *See* 327 B.R. at 123. The

state-court decision at issue granted a motion to dismiss by individual defendants, holding that as

a matter of law they were not general partners and thus were not jointly and severally liable with

a corporate defendant against which claims survived. *See id.* Gibraltar appealed, but, before the

appeal could be resolved, two of the individual defendants who had prevailed on the motion to

dismiss filed for Chapter 7 bankruptcy protection, thus frustrating Gibraltar's active appeal as

against those individuals. *See* 327 B.R. at 123–124. Gibraltar prevailed in the appeal as to the

remaining, non-debtor individual defendants. *See* 327 B.R. at 124.

In the bankruptcy, Gibraltar commenced an adversary proceeding against a debtor who

was among the individual defendants in the prior state-court action, seeking a declaration that

Gibraltar's claim was nondischargeable. *See* 327 B.R. at 124. The debtor moved to dismiss or for

summary judgment, arguing that the prior judgment collaterally estopped Gibraltar from

asserting a claim against the debtor. *See id.* After argument on the debtor's motion in bankruptcy

court, the Appellate Division "issued its decision reversing the . . . order" based on which the

debtor had asserted its collateral estoppel defense, although, due to the automatic stay, the debtor

himself was no longer a party to the appeal. *Id.*

The bankruptcy court thus was confronted with a demand that it give collateral estoppel

effect to a lower-court judgment in favor of individual defendants including the (future) debtor

based on a purely legal conclusion that was reversed on appeal as to seemingly identically situated defendants. *See id.* The court was understandably troubled, first, emphasizing that collateral estoppel requires a "final order," and second, questioning whether the litigants before the court were correctly interpreting the New York State Court of Appeals' holding in *Parkhurst*. *See* 327 B.R. at 124–125; *see also* 110 N.Y. at 392. The court's discussion did not discuss the more recent New York authority, such as *Dobbs Ferry* and *Amica*, that states unequivocally that the pendency of an appeal does not deprive a final lower-court judgment of collateral estoppel effect. *See generally* 797 N.Y.S.2d 120; 445 N.Y.S.2d 820.

The *Douds* bankruptcy court went on to observe that, "[i]n the present instance, the debtor chose to file a voluntary petition," which in turn led to the scheduling of a creditors' meeting that triggered a deadline for Gibraltar to file suit if it wished to challenge the dischargeability of its asserted debt. *See* 327 B.R. at 125. Meanwhile, Gibraltar was stayed from pursuing its active and seemingly meritorious appeal of the judgment as a matter of law that had been awarded to debtor and to similarly situated individuals. *See* 327 B.R. at 125. The Court concluded that, "[h]aving prevented finality, John David Douds [the debtor] will not now be allowed to benefit from his own impairment of the appellate rights of Gibraltar." *Id.* The bankruptcy court observed that the doctrine "of equitable estoppel 'prevents a party from asserting rights when his own conduct renders that assertion contrary to equity and good conscience.'" *Id.* (internal citations omitted). The bankruptcy court held that the bankruptcy itself would "serve to estop" the debtor "from asserting the collateral estoppel effect" of the prior order "whose non-finality is preserved by the bankruptcy filing," where that maneuver would "eliminate the right to appeal an order that will affect other rights, such as the present entitlement to determine the dischargeability of a debt . . . ." *Id.*

16

No case known to this Court has followed *Douds* on this issue, and it is distinguishable. First and briefly, as noted, the *Douds* court questioned the viability of the New York law regarding the effectiveness of collateral estoppel notwithstanding a pending appeal, but all New York authority known to this Court flatly adheres to that position, and this Court is obliged to apply New York collateral estoppel law. *See* 327 B.R. at 124–125. The strength of this law bolsters Debtor's position here and somewhat lessens the force of the *Douds* analysis.

Further, the facts of *Douds* gave rise to equitable considerations that drove the outcome in Gibraltar's favor there, whereas the equitable considerations here, if anything, favor the Debtor. *See* 327 B.R. at 125. In *Douds*, the bankruptcy court relied on equitable estoppel principles and held that "equity and good conscience" would not countenance allowing the debtor to use bankruptcy as a sword to deprive a seemingly correct creditor of its rights to pursue its interests. *See id.* Here, by contrast, the Debtor has not engaged in any form of sharp practice or unfair conduct. Rather, its bankruptcy filing came more than a month after the effective date of the eviction Judgment that it had earlier obtained through the state-court action—in other words, more than a month elapsed after the significant time the state court allowed for Michael E. Crane to seek a stay or relief from the order. Mr. Crane never sought reconsideration of that decision or a stay of its effectiveness, and he never moved to dismiss the bankruptcy case, nor did he promptly seek to lift the stay to permit him to perfect and pursue an appeal from the Judgment. Thus, as of the petition date and even now, the Cranes are subject to the Judgment, which is unstayed notwithstanding the pendency of their unperfected appeal and notwithstanding that the presiding state court was at pains to give them a full and fair opportunity to seek further relief before the Judgment became effective. And even during the bankruptcy case, the Cranes took no action to pursue relief in state court, and instead have been seemingly content to

17

continue to occupy the apartment from which they were ordered evicted roughly nine months ago.

In these circumstances, it is not contrary to equity and good conscience to let a debtor have the benefit of an unstayed, fully effective eviction order where occupants who have been found to have no legal entitlements to occupy the property seek a virtually unlimited opportunity to occupy the premises based on their asserted entitlement to a $1.00 per year lease—so, essentially for free—whose legitimacy has been attacked and rejected by two separate courts. As noted, a prior New Jersey court held that Michael E. Crane had no ownership interest in debtor and no entitlement to occupy any of debtor's property. [Motion, Exhibit A ¶¶ 23–24 ("Michael Crane has never held any vested ownership in Crane Enterprises, LLC, at any time, whatsoever," and "Michael Crane has no right whatsoever to reside or occupy any property owned by Crane Enterprises, LLC.").] And the District Court squarely rejected Michael E. Crane's assertion of entitlement to occupy the Property based on the asserted but disputed lease on which he and Daniel M. Crane rely. [*See* Motion, Exhibit H.] The Cranes' conduct, not Debtor's, smacks of gamesmanship and a concerted effort to exploit every viable means of frustrating Debtor's lawful effort to regain control of its own property.

To emphasize, collateral estoppel may be invoked both against a party in the original litigation and against those in privity with that party. *See generally Buechel v. Bain*, 97 N.Y.2d 295, 304–05 (N.Y. 2001). *Buechel* held that collateral estoppel principles bound former law partners of an attorney who was a party in a proceeding that led to an adverse decision where the former law partners were in privity with the party against whom the issue was decided, and where all were co-signatories to the fee arrangement at issue and co-beneficiaries of trust proceeds. *Id.* As the Court of Appeals explained, "[i]n the context of collateral estoppel, privity

18

does not have a single well-defined meaning . . . [but] [r]ather, privity is an amorphous concept

not easy of application and includes those who are successors to a property interest, those who

control an action although not formal parties to it, those whose interests are represented by a

party to the action, and [those who are] coparties to a prior action." *Id.* (internal citations and

quotations omitted). Thus, privity of a nonparty to a party of a prior litigation is determined by

considering the "circumstances of the actual relationship, the mutuality of interests, and the

manner in which the nonparty's interests were represented in the earlier litigation established a

functional representation such that the nonparty may be thought to have had a vicarious day in

court." *Rojas v. Romanoff*, 128 N.Y.S.3d 189, 197 (2020) (internal citations omitted). "Privity,

traditionally, arose from a limited number of legal relationships in which two parties have

identical or transferred rights with respect to a particular legal interest, chiefly: co-owners and

co-tenants of property . . . ." *Beras v. Carvlin*, 313 F. App'x 353, 355 (2d Cir. 2008) (summary

order) (quoting *Headwaters Inc. v. United States Forest Serv.*, 399 F.3d 1047, 1053 (9th

Cir.2005))); *see also Litchfield v. Crane*, 123 U.S. 549, 551 (1887) (defining privity as "mutual

or successive relationship to the same rights of property").

    *Buechel* is squarely on point here and compels the conclusion that collateral estoppel

prevents both Defendants (Michael E. Crane and Daniel M. Crane) from asserting any

possessory interest in the Property pursuant to the Alleged Lease. *See* 97 N.Y.2d at 304–05; *see*

*also Beras*, 313 F. App'x at 355 (privity exists with and collateral estoppel applies to "co-tenants

of property"). Michael and Daniel Crane are co-signatories and listed tenants on the contested

lease on which they rely. [*See* Motion, Exhibit F.] Regarding the first element of collateral

estoppel requiring the same issue to have been decided in the prior action and decisive in the

present one, the issue (the validity of the lease) is identical, the issue was decided in the Eviction

Action, and the issue is decisive as to the present action. *See Franklin Dev. Co.*, 876 N.Y.S.2d at

105. First, the parties are disputing the validity of the Alleged Lease, which is the same dispute

raised in the Eviction Action. [*See* Complaint ¶ 24; Answer at 3; Reply, Exhibits B, C, D, and E.]

Second, the District Court necessarily rejected Mr. Crane's assertion of the validity of the

Alleged Lease when the court entered the Judgment directing Michael E. Crane's eviction from

the Property. [*See id.*] In fact, in Michael Crane's Declaration in support of the Objection, he

himself admits that the validity of the Alleged Lease was placed into issue in the State Court

Action. [*See Declaration of Michael E. Crane in Support of Objection by Defendants Michael E.

Crane and Daniel M. Crane To, And in Opposition To, Motion of Plaintiff Crane Enterprises,

LLC For Summary Judgment*, Case No. 25-01040, ECF No. 7-3 ¶ 33(ii)–(iv) ("**Michael Crane's

Declaration**").] The Judgment is also not subject to a stay of execution or a stay pending appeal

because the Court's originally issued stay of execution expired on January 31, 2025, more than a

month before the Debtor filed its bankruptcy petition, and Michael E. Crane never sought an

extension of the stay nor did he obtain a stay pending appeal. [Motion ¶ 16.] Third, the validity

of the lease is Defendants' only asserted factual basis for their claim that they have a valid

possessory interest in the Property, and the prior finding is therefore decisive to the present

action.

The second element of collateral estoppel requires that the party against whom preclusion

is sought had a full and fair chance to litigate. *See generally Buechel*, 97 N.Y.2d at 303–04.

Michael E. Crane was a party to the prior state-court action and had such a full and fair

opportunity; the record from that case demonstrates that he actively litigated the Eviction action,

was represented by counsel, and filed numerous pleadings (and a notice of appeal); in so doing,

he relied on an asserted the validity of the contested lease that is also at issue here. [*See* Reply,

Exhibits C, E.] Further, the "party opposing collateral estoppel bears the burden of establishing

that it was not afforded a full and fair opportunity to litigate the issue previously," *Evans*, 469

F.3d at 281 (quoting *Kaufman*, 492 N.E.2d at 63), and Defendants did not even attempt to meet

this burden, other than by objecting that Daniel M. Crane was not a named party to the prior

action.

Defendants also contend that the Judgment is not final because they have appeal rights,

and they argue that therefore *res judicata* (sic) cannot be applied to the decision. [Objection ¶¶

13–16.] This contention is legally incorrect and partly involves a misstatement of the record.

First, despite the Cranes' initial representation otherwise, a final judgment and order was entered

in the state court. [*See* Motion, Exhibit F.] Indeed, in the prior state-court case, Michael E. Crane

also filed a notice of appeal from the Judgment. [Reply, Exhibit G.] And as a matter of New

York law, a final judgment from a prior case has collateral estoppel effect even if there is a

pending appeal from that judgment. *See Dobbs Ferry Union Free School Dist.*, 797 N.Y.S.2d at

121 (quoting *In re Amica Mut. Ins. Co.* [*Jones*], 445 N.Y.S.2d at 822); *Parkhurst v. Berdell*, 110

N.Y. at 392 ("the appeal did not suspend the operation of the judgment as an estoppel").

In determining whether collateral estoppel applies to both Defendants, the final question

is whether Daniel M. Crane, who was not named in the Eviction Action, nevertheless was in

sufficient privity to Michael E. Crane as to be bound by the state court's judgment and the

resulting warrant of eviction and judgment of possession. Undisputed facts establish that he was.

The Alleged Lease explicitly lists Daniel and Michael Crane as co-tenants, and the two Cranes

were identically situated and possessed identical rights under the Alleged Lease, which the

District Court concluded was invalid. [*See* Motion, Exhibit F; *Michael Crane's Declaration*,

ECF No. 7-3 ¶ 11; *Daniel Crane's Declaration*, ECF No. 7-2 ¶ 2.] As noted, the Second Circuit

in *Beras* explicitly recognized "co-tenants" as parties in privity sufficient to apply collateral estoppel, and the parties' relationship easily falls within the general privity test described by the New York Court of Appeals in *Buechel*. *See* 313 F. App'x. at 355 (internal quotations omitted); *see also* 97 N.Y.2d at 304–05. Thus, in the Eviction Action where Michael E. Crane fully and fairly litigated the issue as to validity of the Alleged Lease, Daniel M. Crane's interests were represented because he and Michael E. Crane share a mutuality of interest in the Alleged Lease being deemed valid such that Daniel M. Crane essentially had a "vicarious day in court" in the Eviction Action. *Rojas*, 186 A.D.3d at 111–12 (internal citations omitted).

Thus, the principle of collateral estoppel prevents each Defendant from relitigating the validity of the Alleged Lease here. And, because the Defendants have not presented evidence giving rise to a genuine issue of material fact as to any other relevant issue, Plaintiffs are entitled to summary judgment awarding them turnover and possession of the Property pursuant to Section 542(a) of the Bankruptcy Code.

### D.  This Court Declines at This Time to Instruct the United States Marshall Service to Forcibly Evict Defendants

The Motion also requested an order instructing the United States Marshal Service to forcibly evict the Defendants from the Property on July 6, 2025 (a date that has passed while the Court has had the Motion under advisement).

Bankruptcy courts have authority to order eviction from property belonging to the estate. *See, e.g., In re Searles*, 70 B.R. 266, 272–73 (Bankr. D.R.I. 1987) ("By evicting persons from property that passed to a creditor pursuant to a Consent Order, the Bankruptcy Court simply gave effect to its own prior exercise of authority."); *Watson v. LLP Mortg. Ltd. (In re Watson)*, Nos. 2009-10002, 2009-10003, 2016 WL 3349666, at *23–24 (D.V.I. June 15, 2016) (eviction ordered to enforce sale order). Further, 28 U.S.C. § 157(b)(1) gives Bankruptcy Court judges the

authority to "enter appropriate orders and judgments." *See also* 11 U.S.C. § 105(a) ("The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

The Court, however, believes it would be premature to direct an immediate eviction. The Court will afford Defendants an opportunity to voluntarily comply with this ruling. If they fail to do so without obtaining a stay that authorizes their continued occupancy, Debtor may apply for an order directing Marshal assistance on shortened notice.

### E.  Effective Date of Ruling and Resulting Order

Finally, the Court has considered whether it would be appropriate to shorten or eliminate whatever stay to the effectiveness of an order granting the Motion would ordinarily apply under the Bankruptcy Code and Rules. The Court concludes that it should not shorten that period, so as to preserve Defendants' opportunity to pursue an appeal if they wish to do so.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for summary judgment is GRANTED. Plaintiff is to supply a separate proposed order effectuating and memorializing this decision. The deadline for any appeal will begin to run upon entry of such an order.


It is SO ORDERED.

Dated:   New York, New York
         July 29, 2025                          _____
                                                  */s/ David S. Jones*
                                                  HONORABLE DAVID S. JONES
                                                  UNITED STATES BANKRUPTCY JUDGE