UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CRANE ENTERPRISES, LLC,<br><br>        Debtor. | Case No. 25-10405 (DSJ)<br>Chapter 11 |
| CRANE ENTERPRISES, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL E. CRANE, DANIEL M.<br>CRANE, JOHN DOE AND JANE DOE<br>(Fictitious Persons),<br><br>        Defendants. | Adv. Pro. No. 25-01040 (DSJ) |

## BENCH DECISION AND ORDER

**APPEARANCES:**

**WILK AUSLANDER LLP**
*Special Litigation Counsel for the Debtor*
825 Eighth Avenue, Suite 2900
New York, NY 10019
By:    Eric J. Snyder

**LAW ADVOCATES LLC**
*Co-Counsel to Michael E. Crane and Daniel M. Crane, Defendants*
236 Millbrook Ave, Suite 3R
Randolph, New Jersey 07869
By:    Douglas A. Goldstein

**MORRISON TENENBAUM PLLC**
*Co-Counsel to Michael E. Crane and Daniel M. Crane, Defendants*
87 Walker Street, Floor 2
New York, NY 10013
By:    Brian J. Hufnagel
         Lawrence F. Morrison

**MCSHAPIRO LAW GROUP PC**
*Appellate Counsel to Michael E. Crane and Daniel M. Crane, Defendants*
Three Grace Avenue, Suite 100
Great Neck, New York 11021
By:     Mitchell C. Shapiro

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION & BACKGROUND

Before the Court is the Motion of Michael E. Crane and Daniel M. Crane (the "Defendants") for *(I) an order, pursuant to Rule 9023 or, in the alternative, Rule 9024 of the Federal Rules of Bankruptcy Procedure, to alter, amend or grant relief from the order granting summary judgment against Michael E. Crane and Daniel M. Crane (ECF No. 11), or, in the alternative, (II) an order pursuant to Bankruptcy Rule 8007 for a stay pending the appeal of the summary judgment and order and the November 18, 2024 state court order* (the "Reconsideration/Stay Motion," ECF No. 12). More specifically, the Defendants "seek to alter or amend" the Court's decision granting the Debtor-Plaintiff's motion for summary judgment regarding turnover of the Debtor's property entered on July 29, 2025 (the "Decision") [ECF No. 10] and subsequent order granting summary judgment against the Defendants (the "Order") [ECF No. 11], or in the alternative, a stay of the Decision and Order as well as a stay of the November 18, 2024 decision (the "Eviction Decision") and judgment entered on November 23, 2024 (the "Eviction Order")issued by the Nassau County district court in the state court eviction proceedings in favor of the Plaintiff (the "Eviction Action"). The Defendants had also separately filed a notice of appeal of the Decision and Order [ECF No. 13], *see* Case No. 25-cv-6793 (Cote, J.). The Decision and Order held that the Defendants "have no valid ongoing leasehold or other interest in the apartment [located at 360 Shore Road, Apt 8L, Long Beach, NY 11561]," (the

"Property") and that "Plaintiff is entitled to turnover of [the Property]." *Crane Enters. v. Crane (In re Crane Enters., LLC)*, No. 25-10405 (DSJ), 2025 WL 2157991, at *1 (Bankr. S.D.N.Y. July 29, 2025).

The Debtor-Plaintiff filed an objection to the Reconsideration/Stay Motion [ECF No. 18]. In addition, the Debtor-Plaintiff filed a motion for further relief in aid of its turnover application (the "Eviction Motion") [ECF No. 14], to which the Defendants filed an objection [ECF No. 19].

The Court heard argument on the Reconsideration/Stay Motion and Eviction Motion on August 20, 2025. The Court assumes familiarity with the case's procedural history, parties, prior briefing and decisions by this Court, and, in particular, its Decision and Order. The present Bench Decision merely sets forth key background specific to the Reconsideration/Stay Motion and Eviction Motion. For the following reasons, the Courts denies the Reconsideration/Stay Motion, and grants the Eviction Motion in part by providing an eviction remedy with U.S. Marshals Service assistance if necessary, and denies it in part insofar as it seeks an immediate ruling that Michael and Daniel Crane are in contempt of court, or sanctions for their assertedly contumacious behavior.

## JURISDICTION

The Motion is within this Court's jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431* (S.D.N.Y. Jan. 31, 2012 (Preska, C.J.)). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GOVERNING LEGAL STANDARDS

### A.  Motion for Reconsideration

The Defendants' request for relief is governed by Rule 59(e) and Rule 60(b) of the

Federal Rules of Civil Procedure, which are made applicable to this proceeding by Rules

9023 and 9024 of the Federal Rules of Bankruptcy Procedure, respectively. *See* Fed. R. Civ. P.

59(e); Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9023; Fed. R. Bankr. P. 9024.

Rule 59(e) authorizes the filing of a "motion to alter or amend a judgment." Fed. R. Civ.

P. 59(e). "The major grounds justifying reconsideration are an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

The standard for granting a motion to alter or amend a judgment under Federal Rule 59(e) is

"strict, and reconsideration will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga

Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255,

257 (2d Cir. 1995)). Such a request for relief "is not a vehicle for relitigating old issues,

presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a

'second bite at the apple.'" *Tonga Partners*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*,

156 F.3d 136, 144 (2d Cir. 1998)). Nor is it "an opportunity for a party to 'plug[ ] the gaps of a

lost motion with additional matters.'" *Cruz v. Barnhart*, 2006 WL 547681, at *1 (S.D.N.Y. Mar.

7, 2006) (quoting *Carolco Pictures Inc. v. Sirota,* 700 F. Supp. 169, 170 (S.D.N.Y. 1988)).

"Arguments raised for the first time on a motion for reconsideration are therefore

untimely." *Cruz*, 2006 WL 547681, at *1 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v.

Stroh Cos., Inc.,* 265 F.3d 97, 115–16 (2d Cir. 2001)). Additionally, "[a] party cannot use a Rule

59(e) motion to cure its own procedural failures or to introduce new evidence or advance

arguments that could and should have been presented originally to the court." *In re CPJFK, LLC,*

496 B.R. 65, 67 (Bankr. E.D.N.Y. 2011) (quoting *Scheidelman v. Henderson (In re Henderson)*,

2010 WL 4366021, at *5 (Bankr. N.D.N.Y. Oct. 28, 2010)). Reconsideration is "an extraordinary

remedy to be employed sparingly in the interests of finality and conservation of scarce judicial

resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y.

2000) (citations omitted). The burden rests with the movant. *See In re Crozier Bros., Inc.*, 60

B.R. 683, 688 (Bankr. S.D.N.Y. 1986).

Rule 60(b) provides that the Court may relieve a party from a final judgment, order, or

proceeding due to:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been
discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier
judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;
or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). In the Second Circuit, Rule 60(b) motions are generally disfavored

and are "properly invoked only when 'extraordinary circumstances' justify relief or 'when the

judgment may work an extreme and undue hardship.'" *Empresa Cubana Del Tabaco v. Gen.

Cigar Co. Inc.,* 385 Fed. Appx. 29, 30 (2d Cir. 2010) (citing *Marrero Pichardo v. Ashcroft,* 374

F.3d 46, 55 (2d Cir. 2004) and quoting *Nemaizer v. Baker,* 793 F.2d 58, 63 (2d Cir. 1986)); *see

also Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (quoting *Nemaizer*, 793 F.2d at 63 (2d

Cir. 1986)) (Rule 60(b)(6) only applies "when the asserted grounds for relief are not recognized

5

in clauses (1)-(5) of the Rule" and "there are extraordinary circumstances justifying relief.");

*Devon Mobile Commc'ns Liquidating Tr. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),* 324 B.R. 492, 494 (Bankr. S.D.N.Y. 2005) ("Motions for reconsideration are disfavored, because [c]omplete disposition of discrete issues and claims is often essential to effective case management. If a court is forced to revisit earlier interlocutory rulings, much of the advantage in making the early rulings would be lost.") (citations and quotations omitted); *United Airlines, Inc. v. Brien,* 588 F.3d 158, 176 (2d Cir. 2009)); *U.S. v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) ("A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."). "As [Rule 60](b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect." *Nemaizer*, 793 F.2d at 63.

"Rule 60(b) may not be used to 'relitigate matters settled by the original judgment.'" *Frankel v. ICD Holdings S.A.*, 939 F. Supp. 1124, 1127 (S.D.N.Y. 1996) (quoting *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 60 (2d Cir. 1984)). "The burden of proof is on the party seeking relief from judgment." *Int'l Bhd. of Teamsters*, 247 F.3d at 391. "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1562202, at *12 (Bankr. S.D.N.Y. Mar. 21, 2003) (quoting *Nemaizer,* 793 F.2d at 61). Whether to grant a motion for relief under Rule 60(b) is within the discretion of the court. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citing *Montco, Inv. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 760 (2d Cir. 1981)). Rule 60(b) "is not 'a substitute for a timely appeal . . . .'" *Frankel*, 939 F. Supp. at 1127 (quoting *Nemaizer*, 793 F.2d at 61).

### B.  Stay Pending Appeal

6

The Defendants' request for alternative relief for a stay pending appeal from a decision of a bankruptcy court is governed by Bankruptcy Rule 8007. That rule states, in relevant part, that ordinarily a party seeking a stay of a judgment, order, or decree of the bankruptcy court pending appeal must first move for such relief in the bankruptcy court. *See* Fed. R. Bankr. R. 8007(a)(1)(A).

The decision as to whether or not to grant a stay of an order pending appeal lies within the sound discretion of the Court. *See*, *e.g.*, *In re Gen. Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009); *N.Y. Skyline, Inc. v. Empire State Building Co. L.L.C. (In re N.Y. Skyline, Inc.)*, 520 B.R. 1, 5 (S.D.N.Y. 2014). In exercising this discretion, the Court will consider the following four factors: (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interest that may be affected. *See ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) ("*Adelphia*") (footnote omitted) (citations and internal quotation omitted); *see also In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016).

The burden on the movant seeking a stay is a "heavy" one. *See* In re Gen. Motors Corp., 409 B.R. at 30. Indeed, "[s]tays pending appeal are the exception, not the rule, and are granted only in limited circumstances." *In re Taub*, No. 08-44210, 2010 WL 3911360, at *2 (Bankr. E.D.N.Y. Oct. 1, 2010) (first citing *In re Paolo Gucci*, 105 F.3d 837, 840 (2d Cir. 1997); then citing *In re Aston Baker*, No. CV05-3487(CPS), 2005 WL 2105802, at *3 (E.D.N.Y. Aug. 31, 2005)). While some courts have held that, to prevail, the moving party must show "'satisfactory' evidence on all four criteria," *see*, *e.g.*, *Turner v. Citizens Nat'l Bank (In re Turner)*, 207 B.R.

373, 375 (B.A.P. 2d Cir. 1997) (quoting *Bijan-Sara Corp. v. Fed. Deposit Ins. Corp. (In re Bijan-Sara Corp.*), 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996)), other courts have held that the inquiry involves a balancing of the four factors and the lack of any one factor is not dispositive to the success of the motion. *See In re Gen. Motors Corp.*, 409 B.R. at 30; *Adelphia*, 361 B.R. at 347. The Court declines to determine which approach is controlling but concludes, for reasons explained *infra*, that the Defendants fail to satisfy the criteria of either approach.

## DISCUSSION

### A.  The Defendants Have Not Satisfied Their Burden Under Rules 59 and 60 to Alter or Amend and/or Relieve the Defendants From the Decision and Order

The Defendants contend that: (1) the Court improperly concluded that Daniel Crane is bound by the Eviction Decision and Eviction Order brought against his father Michael Crane in the Eviction Action, arguing instead that New York law prohibits enforcement of that order against Daniel Crane. *See* Reconsideration/Stay Motion at 8-14; (2) Daniel Crane is not collaterally estopped from litigating his rights under the alleged lifetime $1.00 per year lease (the "Alleged Lease") for the Property. *See id.* at 14-18; and (3) the Alleged Lease is enforceable and not void under New York law. See id. at 18-20.

The Defendants fail to meet their burden under Rules 59 and 60. The Court's Decision discussed at length how Daniel Crane, who was not named in the Eviction Action, is collaterally estopped "from relitigating the validity of the Alleged Lease" and that Defendants failed to present "evidence giving rise to a genuine issue of material fact as to any other relevant issue." *Crane Enters.*, 2025 WL 2157991, at *10. Defendants do not point to any intervening change of controlling law, new evidence, or a need to correct a clear error or prevent manifest injustice. *See*

8

*Tonga Partners*, 684 F.3d at 52 (quoting *Shrader*, 70 F.3d at 257). Moreover, the Defendants

raise for the first time additional issues, namely by contending that N.Y. RPAPL § 749(1) and

CPLR 1024 prohibit enforcement of the Eviction Decision and Eviction Order against Daniel

Crane, *see* Reconsideration/Stay Motion at 8-14, and that the Alleged Lease is enforceable and

not void because it is not subject to N.Y. RPAPL § 290(1), *see id.* at 18-20. These contentions

were not before the Court when it issued its Decision, and they are thus waived or abandoned or,

at a minimum, not a proper basis for reconsideration.[1]

Rather, issues concerning the validity of the Alleged Lease and enforceability of the

Eviction Decision and Eviction Order were already litigated to a final judgment and order and

the Court made its determination that the judgment deserves preclusive effect as applied to both

Defendants under principles of collateral estoppel, certainly in the context of the issue before this

Court – whether Debtor is entitled to turnover of its property pursuant to Section 542 of the

Bankruptcy Code. *Crane Enters.*, 2025 WL 2157991, at *9. In its Decision, the Court relied on

authority demonstrating that "the doctrine of collateral estoppel prevents a party or those in

privity with that party from relitigating an issue that was decided in an earlier proceeding where

the party against whom preclusion is sought had a full and fair opportunity to litigate the precise

issue at hand." *Crane Enters.*, 2025 WL 2157991, at *6 (citing *Evans v. Ottimo*, 469 F.3d 278,

281–82 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456, 482 N.E.2d 63, 67

(N.Y. 1985))). The Court determined that collateral estoppel bound both Defendants to the

Eviction Decision even though Daniel Crane was not named in the Eviction Action because

"[t]he Alleged Lease explicitly lists Daniel and Michael Crane as co-tenants, and the two Cranes

---

[1]    At oral argument during the August 20 hearing, counsel for Defendants pointed to lines 3-14 of page 28 of
the hearing on summary judgment of the turnover motion as presenting an objection to "collaterally estopping
Daniel Crane despite his non-party status in the state court action." *See* Hr. Tr. 28:3-14, June 26, 2025 [ECF No. 9].
But that passage cited none of the specific state law on which Defendants now rely.

were identically situated and possessed identical rights under the Alleged Lease, which the
District Court concluded was invalid." *Crane Enters.*, 2025 WL 2157991, at \*9. It would be
inappropriate at this stage for the Court to hear re-litigation of old issues decided by the state
court or consider new theories of the case. *See Tonga Partners*, 684 F.3d at 52 (quoting *Sequa
Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

Moreover, Daniel and Michael Crane fail to grapple with the reality that, in the collateral
estoppel context, the Second Circuit has recognized that privity traditionally arose from such
legally defined relationships as co-tenants to a property. *See Beras v. Carvlin*, 313 F. App'x 353,
355 (2d Cir. 2008). New York law recognizes that collateral estoppel can bind parties who
control an action but are not party to it or whose interests are represented by a party to the action.
*See Buechel v. Bain*, 97 N.Y.2d 295, 304–05, 766 N.E.2d 914, 920 (N.Y. 2001). The Defendants
have not shown that such authority was misapplied or erroneous; indeed, the Defendants include
a long block quote from *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052-54 (9th Cir.
2005), cited by the Second Circuit in *Beras*, in their objection, *see* Reconsideration/Stay Motion
at 16-17, that explains that in certain limited circumstances, privity can bind a non-party whose
interests are adequately represented by a party to the action with the same interests. Privity is
designed to, among other things, "'expressly foreclose[e] successive litigation by nonlitigants, as
for example in bankruptcy or probate.'" *Headwaters*, 399 F.3d at 1053 (quoting *Martin v. Wilks*,
490 U.S. 755, 762 n.2 (1989)). The issue considered by the Court in the Decision was whether
the Debtor is entitled under Bankruptcy Code section 542(a) to turnover of its property in which
it had an interest, and the Court has held that the answer to that question is yes. *See Crane
Enters.*, 2025 WL 2157991, at \*4–5. None of the Defendants' state-law authority goes to that

question. Therefore, the Defendants fail to meet their burden under Rules 59 and 60 and the Court denies the Reconsideration/Stay Motion.

### B. The Defendants Have Not Satisfied Their Burden to Obtain a Stay Pending Appeal From This Court

In the alternative, Defendants request a stay pending appeal of not only the Decision and Order, but also the Eviction Decision and Eviction Order issued by the Nassau County court. *See* Reconsideration/ Stay Motion at 20-26. As previously discussed, Defendants must satisfy the factors described by the Second Circuit to merit a stay pending an appeal of the Court's decision, *i.e.*, (1) whether the Defendants will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the Defendants have demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interest that may be affected. *See Adelphia*, 361 B.R. at 346.

### a. The Defendants Have Not Demonstrated Irreparable Harm From Turnover of the Property

The Defendants argue that they will suffer "substantial, immediate harm" if the Court does not stay enforcement of the Decision and Order and contend that their appeal of the Eviction Decision and Eviction Order will be moot if Defendants are evicted from the apartment. Reconsideration/ Stay Motion at 22-24. Michael Crane's sworn declaration states that the Property is his and Daniel's "primary and sole residence" and that they would be rendered "homeless" by an eviction. See M. Crane Decl. ¶ 8 [ECF No. 12-1]; D. Crane Decl. ¶ 7 [ECF No. 12-2].

A showing of probable irreparable injury is the "principal prerequisite" for the issuance of a stay pursuant to Bankruptcy Rule 8007, and such harm "must be 'neither remote nor speculative, but actual and imminent.' " *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016) (citations omitted). "[T]he moving party must demonstrate that such injury is likely before the other requirements will be considered." *Fox v. Mandiri (In re Perry H. Koplik & Sons, Inc.)*, No. 02-B-40648, 2007 WL 781905, at *1 (Bankr. S.D.N.Y. Mar. 13, 2007) (citation omitted); *see also Adelphia*, 361 B.R. at 347 ("A showing of probable irreparable harm is the principal prerequisite for the issuance of a [Rule 8007] stay.") (citation omitted).

"To be sure, courts in this circuit have held that eviction can be an irreparable injury." *Greer v. Mehiel*, No. 15-CV-06119, 2016 WL 828128 (AJN), at *9 (S.D.N.Y. Feb. 24, 2016). "Yet in every such case the Court has found, the party facing eviction also faced the real threat of homelessness." *Id.* This is not the case here. Rather, the record does not establish that denial of the stay would render Defendants homeless. Defendants' counsel acknowledged during the August 20 hearing that Daniel Crane has not been to the United States during 2025, and that he has been in Israel with his wife and infant child, and pursuing intensive rabbinical studies in Israel while residing near his wife's family as they raise their child. Defendants' counsel represents that Daniel Crane does wish to return to the Property in Long Beach to be near his father. Defendants' counsel also acknowledged that the only other resident of the two-bedroom apartment is Michael Crane, the father of Daniel Crane. These representations came in connection with Defendants' objection to consideration of deposition testimony of Daniel Crane proffered by Debtor's counsel due to asserted formal defects in the transcript, despite Defendants' counsel having attended the deposition and having confirmed that a deposition occurred, with Daniel Crane appearing virtually from Israel.

12

The Court does not rely on the disputed transcript excerpts themselves, but notes that they include purported testimony of Daniel Crane stating that he resides in Jerusalem, Israel with his wife and child, not physically in the Property. *See* Tr. Dep. D. Crane, 32:5-6, 52:9-10, 49:24-50:8 [ECF No. 18-2]. Moreover, the disputed transcript reflects that Daniel Crane stated that he did not leave Israel during 2025, *see id.* 35:3-4, 53:23-25, 55:18-21, he did not leave Israel after his wedding during March 2023, *see id.* 35:12-13, he doesn't know where he father, Michael Crane, resides, *see id.* 44:16-17, and he doesn't know who resides in the Property currently, *see id.* 51:4-7. Rather than risk relying on testimony whose admissibility is disputed, the Court merely records these observations as presenting contentions that Defendants' counsel addressed, including by making representations described above. Daniel Crane further has presented a declaration stating that he supposedly plans to come back soon and live in the Property, see D. Crane Decl. ¶ 8, but, given his acknowledged physical presence in Israel for the entirety of this bankruptcy case, there is no basis to say he will be rendered homeless or forcibly separated from his father by an adverse ruling. Moreover, the now-acknowledged facts about Daniel Crane's circumstances flatly contradict earlier sworn statements that he resides in the apartment and therefore would be irreparably harmed by an eviction. *See id.* ¶ 7. Relatedly, Michael Crane's claims of impending destitution, see M. Crane Decl. ¶ 8, are not credible given Debtor's unrebutted and plausible assertion that Michael Crane has misappropriated roughly $2 million in recent months or years. See Adv. Pro. No. 24-10351, ECF No. 4, Ex. A; ECF No. 14, Exs. 14, 15, ECF No. 39, Ex. 7.

Therefore, the Court finds that any harm to the Defendants caused by the Court's Decision and Order is not "irreparable harm" in light of their circumstances, and because, if the Eviction Decision were to be overturned on appeal, the Defendants "could be compensated in the

form of monetary damages for the costs associated with being forced to move out of the [Property]." *In re Siomkos*, No. 24-10619 (LGB), 2025 WL 1462938, at *2 (Bankr. S.D.N.Y. May 21, 2025); *see also Buco v. Frost (In re Buco)*, No. 25-CV-05496 (MMG), 2025 WL 2070767, at *2 (S.D.N.Y. July 23, 2025) (citing *Mongiello v. Eastman (In re Mongiello)*, No. 24-CV-00694 (CS), 2024 WL 729865, at *2 (S.D.N.Y. Feb. 22, 2024)). If events pass them by such that they are procedurally barred from continuing their noticed but unperfected appeal from the Eviction Order, then that outcome would be one of their own making through their months of inaction since the Eviction Order became effective.

  b.  The Defendants' Delay in Seeking a Stay Undercuts Any Showing of Irreparable Harm and Threatens to Moot or Foreclose Their Appeal

The state court entered the Eviction Order more than eight months ago, and that order became effective more than six months ago, after expiration of a delayed effectiveness date that the state court imposed to protect Michael Crane's ability to seek relief from the order. Michael Crane failed to seek or obtain such relief at any time. Meanwhile, Debtor filed its bankruptcy petition on March 4, 2025, more than five months ago, and despite the Cranes' assertion that this is an improper or bad-faith bankruptcy case, they have never filed a motion or sought relief on that theory, despite the ready availability of, among other things, dismissals or conversions to Chapter 7 liquidations for "cause," *see* 11 U.S.C. § 1112(b), or the possibility of seeking an examiner or trustee. Nor did the Cranes seek relief from the automatic stay until July 3, 2025, virtually four months after the bankruptcy case was commenced. Finally, Daniel and Michael Crane did not file their motion seeking reconsideration or a stay of this Court's order granting the turnover summary judgment motion until 9:13 p.m. on the day before the order became fully

14

effective upon expiration of the automatic fourteen-day stay of effectiveness afforded by the
bankruptcy rules.

Courts in this Circuit have long recognized that a party's delay in seeking injunctive relief
weighs heavily against a finding of irreparable harm. *See Tough Traveler, Ltd. v. Outbound
Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (explaining that a presumption of irreparable harm is
"inoperative" where the movant has delayed in pursuing relief, and that such delay may,
"standing alone," preclude preliminary injunctive relief) (quoting *Majorica, S.A. v. R.H. Macy &
Co.*, 762 F.2d 7, 8 (2d Cir. 1985)); *see also Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d
207, 222 (S.D.N.Y. 2019) (courts "must consider a plaintiff's delay in seeking relief when
analyzing whether the plaintiff will suffer irreparable harm") (internal quotation marks omitted).
Bankruptcy courts apply the same principle. *See In re Homaidan*, 650 B.R. 372, 424 (Bankr.
E.D.N.Y. 2022) (recognizing the Second Circuit's instruction that courts should consider delay in
assessing irreparable harm).

Recent authority illustrates this rule. In *Nazmiyal v. Treasures & Gems, Ltd.*, No. 25-cv-
1047-AS (S.D.N.Y. Feb. 7, 2025), ECF No. 6, the district court denied a stay motion where
defendants, including Michael Crane, waited until the eve of a sale to seek relief. Observing that
they had declined to participate meaningfully in the bankruptcy process until its conclusion, the
court determined that their last-minute motion did not reflect the urgency associated with
irreparable harm. *See id.* at 2 (citing *In re Kaplan*, 373 B.R. 213, 215 (B.A.P. 1st Cir. 2007)
(denying stay where appellant "sat on his hands")). The same reasoning applies here. Again, and
to emphasize, Michael Crane never sought a stay of the Eviction Decision and Eviction Order
that went effective months ago on January 31, 2025, "more than a month before the Debtor filed
its bankruptcy petition." *Crane Enters.*, 2025 WL 2157991, at *9. He "never sought an extension

15

of the stay nor did he obtain a stay pending appeal." *Id.* Therefore, Defendants' conduct in this case strongly undermines their claim of irreparable harm.

Additionally, Defendant's contention that denial of a stay risks mooting their appeal of the Eviction Decision is unavailing. See Reconsideration/Stay Motion at 22. The Eviction Decision was entered on November 18, 2024. The Eviction Order was entered on November 23, 2024. Movants did not file a motion to lift the stay until July 3, 2024 – more than seven months later – during which time they took no steps to advance their state court appeal. If their appeal becomes moot, that outcome is attributable to their own delay.

The Cranes' ongoing failure to diligently pursue their asserted rights also undermines the impassioned criticisms of their appellate lawyer during the August 20 stay hearing, which the Court permitted as a supplement to extensive argument presented by the Cranes' bankruptcy counsel. Appellate counsel called the conduct of Debtors' principals and counsel "devious" and a "travesty," arguing that the Crane Enterprises bankruptcy case serves no purpose but to attempt to deprive Michael and Daniel Crane of the proper forum for their asserted entitlements. But these contentions would be appropriate to raise in other types of applications – to convert or dismiss the case as a bad faith filing or for other cause, or to install a Chapter 11 trustee – none of which Michael and Daniel Crane has ever pursued. Meanwhile, these ad hominem attacks shed no light on the question presently before the Court, whether there is either ground for reconsideration or ground to stay the Court's turnover summary judgment decision and order. The Court pauses to note that counsel for Debtor raised serious concerns about Michael Crane's conduct in exchange, including the seeming inconsistency between his sworn statement now that he has resided in the Property (in Long Beach) for the last five years as compared to his sworn submission to this Court in a 2024 bankruptcy of another entity controlled by his family, in

which, when it served his interests, he swore that he resided in that entity's real property in

Manhattan. Further, Mr. Snyder asserted that Michael Crane absconded with $1.7 million in

value of the family's Manhattan property, a contention about which the Court makes no factual

finding, but that suggests that Mr. Crane's counsel's criticisms cannot be assumed to be true or a

fair overview of the case's equities.

     c.   The Defendants Have Not Shown Likelihood of Success on the Merits

The stay factor of "likelihood of success on the merits" likewise weighs against the

Defendants. As discussed previously, Defendants have not shown the required likelihood given

Michael and Daniel Crane's privity and their failure to grapple with the controlling issue, which

is whether debtor is entitled to turnover of property as to which Michael and Daniel Crane have

been held to have no interest by a state court order eight months ago from which they have not

sought or obtained a stay or other relief. They did not persuasively contest the grounds

underlying the Decision's application of collateral estoppel principles. Their failure to interpose a

meaningful objection further undermines any showing of likelihood of success.

     d.   A Stay Would Harm the Estate and Its Creditors

The Defendants assert that they are "ready, willing, and able" to pay the Debtor's post-

petition fees for the Property, "including payment of its carry costs such as insurance,

cooperative fees and assessments, and other maintenance costs associated" with the Property.

Reconsideration/Stay Motion at 24. Notably, the Defendants do not offer to cure outstanding

prepetition arrears associated with the Property. Moreover, where Defendants are "unlikely to

succeed on the merits, granting a stay 'would prolong the bankruptcy proceeding with no

foreseeable offsetting gain and thus injure creditors.'" *In re Carrington*, 698 F. Supp. 3d 659, 662

17

(S.D.N.Y. 2023) (quoting *In re Hi-Toc Dev. Corp.*, 159 B.R. 691, 693 (S.D.N.Y. 1993)), *appeal dismissed*, No. 23-7433, 2024 WL 3491202 (2d Cir. May 3, 2024). Even more pointedly, adopting the approach proposed by the Cranes – that the Court allow them to continue to inhabit the Property while their appeal winds its way through the state-court appellate process – would indefinitely delay Debtor's ability to sell the Property for any reasonable price, thus prejudicially thwarting Debtor's efforts to secure prompt and commercially appropriate revenue from its Property, for the benefit of stakeholders who may ultimately include Michael Crane. On this record, granting a stay would prejudice the estate and its creditors by delaying distributions without offsetting benefit.

e.   The Public Interest Favors Denial of the Stay

The public interest also weighs against a stay. Courts have recognized that the public interest favors efficient administration of bankruptcy estates. *See Buco*, 2025 WL 2070767, at *2 (citing Adelphia, 361 B.R. at 349; *In re 473 W. End Realty Corp.*, 507 B.R. 496, 508 (Bankr. S.D.N.Y. 2014)). The Defendants have already frustrated this important public purpose through inaction followed by obstructionist actions both before and during the bankruptcy case. They now propose an indefinite extension of the status quo that serves their interests while frustrating Debtor's attempt to efficiently wind up its affairs.

The Defendants, meanwhile, contend that the public interest lies in protecting family unity. *See* Reconsideration/Stay Motion at 25–26. But even their own counsel's representations make clear that Daniel Crane now physically resides in Jerusalem with his wife and daughter, despite his asserted intention to return, and Daniel Crane acknowledges that he has not physically been to the property at any time in 2025, nor has he presented evidence of physical occupancy at any recent time. In fact, Debtor's counsel represented, and Defendants' counsel did

not contest, that Daniel Crane was born in 1996 and has resided in Israel since he graduated from high school. Meanwhile, Defendants' counsel also represented that the Property has no other resident other than Michael Crane. This record belies any contention that denial of a stay will impair the Cranes' family relationships. The public interest instead favors moving this case toward resolution.

### C. The Court Grants the Eviction Motion in Part and Denies It in Part

Lastly, the Debtor-Plaintiff seeks in the Eviction Motion an order authorizing the Debtor-Plaintiff to take any and all steps to evict the Defendants from the Property, including, if necessary, an application and authorization to employ assistance from the U.S. Marshals Service. *See* Eviction Motion ¶¶ 1-7. The Eviction Motion also seeks monetary sanctions against the Defendants for allegedly failing to comply with the Order by failing to turn over possession of the apartment at issue. See id. ¶ 15.

In its Decision, the Court observed that bankruptcy courts "have authority to order eviction from property belonging to the estate." *Crane Enters.*, 2025 WL 2157991, at *10 (citing *In re Searles*, 70 B.R. 266, 272–73 (Bankr. D.R.I. 1987); *Watson v. LLP Mortg. Ltd. (In re Watson)*, Nos. 2009-10002, 2009-10003, 2016 WL 3349666, at *23–24 (D.V.I. June 15, 2016); 28 U.S.C. § 157(b)(1); 11 U.S.C. § 105(a)).

In its Order, the Court stated that it "will afford Defendants an opportunity to voluntarily comply with this ruling. If they fail to do so without obtaining a stay that authorizes their continued occupancy, Debtor may apply for an order directing Marshal assistance on shortened notice." *See* Order at 2. The Court exercised its discretion and allowed the Defendants an opportunity to voluntarily comply with the Order. The Court having denied the relief sought in

the Reconsideration/Stay Motion, the Order has now gone into effect. As explained in its Decision, the Court authorized the Debtor to "apply for an order directing Marshal assistance on shortened notice." *Crane Enters.*, 2025 WL 2157991, at *10. The Debtor-Plaintiff has done so. The Court will now grant the enforcement support requested including authorization for Debtor to change the Property's locks and, if necessary, employ eviction remedies including by enlisting the assistance of the U.S. Marshals Service. Debtor can submit an appropriate proposed order to effectuate this relief; the Court suggests that Debtor consult with U.S. Marshals Service representatives to craft an order that the U.S. Marshals Service is able and willing to carry out. Further, the Court directs that Defendants may be held in contempt if they have not fully vacated the premises, voluntarily or otherwise, by September 5, 2025.

As stated on the record at the August 20 hearing, the Court declines to sanction the Defendants at this time because they did not violate an unambiguous provision of the Order, which lacked a date certain by which turnover must be complete. They sought a stay pending appeal of the Decision and Order within the time afforded by the Bankruptcy Rules. *See generally Off. Comm. of Unsecured Creditors v. Charter Commnc'ns Operating LLC (In re Windstream Holdings, Inc.)*, 105 F.4th 488, 495 (2d Cir. 2024) ("[C]ivil contempt is a severe remedy" requiring "that principles of basic fairness requir[e] that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt.") (citations and quotations omitted).

## CONCLUSION

For the reasons stated above, the Reconsideration/Stay Motion is denied. The Eviction Motion is granted in part, denied in part. The time to bring any appeal will commence upon entry

of a separate order effectuating this Bench Decision.

It is SO ORDERED.

Dated:    New York, New York
          August 20, 2025                    _____*s/ David S. Jones*_____
                                             HONORABLE DAVID S. JONES
                                             UNITED STATES BANKRUPTCY JUDGE